**LORONA STEINER DUCAR, LTD.**
Jess A. Lorona, #009186
Katherine E. Flaherty, #024303
Beth H. Zuckerberg, #018908
3003 North Central Avenue, Suite 1500
Phoenix, Arizona 85012
Telephone: (602) 277-3000
Facsimile: (602) 277-7478
Email: jlorona@azlawyers.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Teresa Waddell, a single woman,<br><br>  Plaintiff,<br><br>v.<br><br>City of Phoenix, a political subdivision of the State of Arizona<br><br>  Defendant. | Case No.<br><br>**VERIFIED COMPLAINT** |

Plaintiff Teresa Waddell, (hereinafter referred to as "Waddell" or "Plaintiff"), through her attorneys, Lorona Steiner Ducar, Ltd., and for her Complaint against the Defendant, alleges as follows:

## THE PARTIES

1.  The Plaintiff, Waddell, is a single woman, and a resident of New River, Maricopa County, Arizona.

2.  Defendant City of Phoenix, (hereinafter referred to as "the City"), is a political subdivision of the State of Arizona.

3.  All acts relevant to this Complaint took place in Maricopa County, Arizona.

/ / /

1

**JURISDICTION AND VENUE**

4. The above named Defendant has caused acts and/or omissions to occur in the State of Arizona, out of which the Plaintiff's claims arise.

5. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331.

6. The Defendant is subject to the personal jurisdiction of this Court.

7. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court.

**GENERAL ALLEGATIONS**

8. Plaintiff hereby incorporates by reference all allegations contained in the foregoing paragraphs of her Complaint.

9. Waddell worked for the City of Phoenix Police Department, ("Police Department"), from September 13, 1982 through September 1, 1990.

10. Waddell was rehired by the Police Department on September 11, 1992, after an extended maternity leave, and has been employed by the Police Department since that date.

11. On or about June 16, 1997, the Police Department started the Mounted Patrol Unit within the Homeland Defense Bureau, Downtown Operations Unit, ("DOU").

12. Waddell participated in the trainings and was transferred to the Mounted Patrol Unit on June 16, 1997.

13. During her time with the Mounted Patrol Unit, Waddell advanced to become a horse trainer.

14. The DOU is a highly specialized unit that provides professional police service to a defined Downtown Phoenix Area in order to combat criminal activity, maintain order and enhance the overall quality of life for those served.

15. The Downtown Phoenix area is defined by the Homeland Defense Bureau as Seventh Street to Seventh Avenue, Buchanan Street to Fillmore Street.

16. The DOU Mounted Patrol Unit's goals are to provide police services

while on horseback in a manner consistent with the principles of Community Based Policing.

17. The horses utilized by the Mounted Patrol Unit are considered part of the Mounted Patrol Unit.

18. Mounted Patrol Unit Officers are responsible for care and maintenance of the horses.

19. As part of this responsibility, Mounted Patrol Unit Officers are responsible for following proper feeding, grooming and care standards for the horses, and required to keep operational readiness of tack and equipment.

20. In or around November 1997, Waddell began riding "Magic" aka Devilish Gils, a horse assigned to the Mounted Patrol Unit.

21. Magic was boarded on the City of Phoenix property at Turf Paradise.

22. From November 1997 through December 2008, Waddell was Magic's primary rider.

23. As Magic's primary rider, Waddell was responsible for feeding, grooming and caring for Magic.

24. Specifically, as a Mounted Patrol Unit Officer, Waddell was required to prepare Magic by feeding him prior to deployment, grooming him prior to deployment except under emergency response situations, and performing facility maintenance duties as determined by the Mounted Unit Sergeant.

25. As part of her responsibilities as a Mounted Patrol Unit Officer, Waddell was required to prepare the riding equipment, including cleaning and checking the tack for deficiencies to ensure the safety of herself and her horse, and to periodically inspect vehicles and trailers for problems.

26. As part of her responsibilities as a Mounted Patrol Unit Officer, Waddell was required to care for Magic by establishing a feeding program suitable for his eating habits and nutritional needs, to inspect him each duty day for injuries,

**LORONA STEINER DUCAR, LTD.**
ATTORNEYS AT LAW
3003 NORTH CENTRAL AVENUE, SUITE 1500
PHOENIX, ARIZONA 85012
(602) 277-3000

unusual behaviors or changes in eating habits, and to utilize positive reinforcement as part of the training program.

27. As part of her responsibilities as a Mounted Patrol Unit Officer, Waddell was required to perform clerical duties as assigned by the Unit Sergeant and order feed and supplement for her horse.

28. Waddell was also required to keep and maintain records, schedule horse shoeing services and maintain supplies, mounted police training outlines, class schedules, class rosters and testing records, community event requests, records, veterinary records and horse training records for her assigned horse.

29. As a Mounted Patrol Unit Officer, Waddell is required to perform facility maintenance and some administrative duties as determined by the Unit Sergeant.

30. The City of Phoenix Police Department or the City of Phoenix is responsible for any expenses associated with shoeing a horse assigned to the Mounted Patrol Unit.

31. The City of Phoenix Police Department or the City of Phoenix is responsible for compensating Waddell for the care and maintenance of Magic.

32. The Homeland Defense Bureau has a written Administrative Policy pertaining to the DOU Mounted Patrol Unit.  (*See* Administrative Policy, attached hereto as Exhibit "A".)

33. According to the Administrative Policy, the responsibilities of the Mounted Patrol Unit include public relations appearances, supplemental assistance to patrol and specialty details, monitoring crowd activities at Special Events and Community Events, and other assignments as directed by the Unit Lieutenant.

34. As an employee of the City of Phoenix Police Department and a member of the Police Officers Unit, Waddell is a member of the Phoenix Law Enforcement Association.

4

35. The Phoenix Law Enforcement Association is an authorized representative of employees in the Police Officers Unit, and has the exclusive right to serve as the meet and confer representative of all such employees.

36. The City of Phoenix and the Phoenix Law Enforcement Association entered into a Memorandum of Understanding, ("MOU"). (*See* Memorandum of Understanding, attached hereto as Exhibit "B".)

37. The MOU details the agreement between the City of Phoenix and the Phoenix Law Enforcement Association concerning wages, hours and working conditions of employees in the Police Officers Unit.

38. According to the MOU, a unit member who is required to perform work duties after leaving the City facilities and at a time other than his or her regularly assigned shift will receive a minimum of three (3) hours pay at a rate of time and one-half the member's base pay, calculated to the nearest quarter hour.

39. Waddell's regular schedule with the Police Department consisted of four work days per week, ten hours per day, for a total of forty hours per work.

40. In 2008, Waddell was earning $32.50 per hour.

41. In 2009, Waddell was earning $34.82 per hour.

42. In 2010, Waddell was earning $34.47 per hour.

43. In addition to her assigned 40 hour work week, from November 1997 through June 2, 2010, Waddell was also required to perform maintenance, care and grooming of Magic, who was the property of the Police Department, a minimum of twice a day, seven days per week (hereinafter referred to as "maintenance practices").

44. Each of the two daily maintenance practices took Waddell a minimum of 30 minutes to three hours.

45. The time spent caring for and maintaining Magic is considered overtime, and subject to the overtime provisions of the MOU and the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

5

46. Pursuant to the MOU, the time Waddell spent caring for and maintaining Magic, in addition to her 40 hour work week, entitles Waddell to a minimum of thirty (30) minutes to three (3) hours compensation per maintenance session, paid at time and one-half.

47. In 2008, Waddell cared and maintained Magic, who was the property of the Police Department, from December 3, 2008 through December 31, 2008 twice a day. This totals 28 days.

48. In 2009, Waddell cared and maintained Magic, who was the property of the Police Department, from January 1, 2009 through December 31, 2009 twice a day. This totals 365 days.

49. In 2010, Waddell cared and maintained Magic, who was the property of the Police Department, from January 1, 2010 through June 2, 2010 twice a day. This totals 153 days.

50. Waddell is entitled to a minimum of thirty (30) minutes to three (3) hours of overtime for each maintenance session in excess of her assigned 40 hour work week.

51. Waddell is entitled to a minimum of six (6) hours of overtime for each day that she cared and maintained Magic, who was the property of the Police Department.

52. As a Mounted Patrol Unit horse, Magic was required to be shoed every six to eight weeks, at a cost of $90.00 per shoeing.

53. The cost for shoeing a Mounted Patrol Unit horse is an element of the Mounted Patrol Unit's budget.

54. In November 2008, Waddell's Sergeant refused to pay for Magic's shoeing out of the Mounted Patrol Unit's budget.

55. As a result of the City's failure to pay for the shoeing, Waddell was forced to pay this expense out of her own funds in order to maintain proper care of

**LORONA STEINER DUCAR,LTD.**
ATTORNEYS AT LAW
3003 NORTH CENTRAL AVENUE, SUITE 1500
PHOENIX, ARIZONA 85012
(602) 277-3000

the horse, while it remained on the Police Department's property.

56. Waddell spent approximately $90.00 shoeing Magic, which has not been paid for or reimbursed by the Defendant.

57. Magic was retired by the Police Department in October 2008.

58. It was the responsibility of Waddell's Sergeant, Jeffrey Green, to complete the Request for Council Action paperwork in order to have Magic officially released to Waddell.

59. Until Magic was released to Waddell, he remained the property of the Police Department.

60. Though Waddell repeatedly inquired as to the status of the Request for Council Action paperwork from Sergeant Green, Sergeant Green refused or failed to complete and file such paperwork.

61. Despite the refusal or failure to prepare the Request for Council Action paperwork, Sergeant Green authorized Waddell to remove Magic from City of Phoenix property and relocate him to her home.

62. Waddell removed Magic from City of Phoenix property on or about December 3, 2008, via a City of Phoenix horse trailer and truck, with the assistance of other City of Phoenix employees and with the knowledge and consent of Sergeant Green.

63. In light of Sergeant Green's refusal or failure to file Request for Council Action paperwork, on or around May, 2010, another Sergeant, Ben Moore, prepared the Request for Council Action. (*See* Request for Council Action, attached hereto as Exhibit "C".)

64. In response to the Request for Council Action, on or about June 2, 2010, Magic was officially sold to Waddell pursuant to Ordinance S-37105. (*See* Ordinance S-37105, attached hereto as Exhibit "D".)

65. After his retirement but before being sold to Waddell, Magic remained

7

the property and responsibility of the Police Department.

66. Waddell provided an Invoice, No. 1002 to Lieutenant Lazell Accounts requesting reimbursement of her personal expenditures for Magic's boarding, feeding, shoeing, and veterinary care from November 2008 to May 2010. (*See* Invoice No. 1002, attached hereto as Exhibit "E".)

67. The total amount claimed by Waddell for Magic's boarding, feeding, shoeing, and veterinary care was $6,154.00. This amount included the $90.00 shoeing fee for November 2008, as referenced above.

68. Lieutenant Lazell told Waddell that the City of Phoenix would not pay the invoice. To date, the City of Phoenix has refused or failed to pay the $6,154.00 invoiced by Waddell.

## Count I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 ET SEQ.

69. The Plaintiff hereby incorporates all of the prior allegations and referenced exhibits set forth in the foregoing paragraphs as if fully set forth herein.

70. Pursuant to the Fair labor Standards Act, an employee required to work more than 40 hours per work must be compensated for his or her time in excess of the 40 hours, at a rate not less than one and one-half times the employee's regular rate of pay.

71. As Magic's primary rider, Waddell was responsible for feeding, grooming and caring for Magic, who was the property of the Police Department, a minimum of twice a day, seven days per week.

72. The time expended in maintaining and caring for Magic was in addition to or in excess of the Plaintiff's 40 hour assigned work week.

73. In 2008, Waddell was earning $32.50 per hour.

74. In 2009, Waddell was earning $34.82 per hour.

8

1     75.    In 2010, Waddell was earning $34.47 per hour.

2     76.    Each of the two daily maintenance practices took Waddell a minimum of thirty (30) minutes to three (3) hours.

77. The time spent caring for and maintaining Magic is considered overtime, and subject to the overtime provisions of the MOU and the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

78. Pursuant to the MOU, the time Waddell spent caring for and maintaining Magic, in addition to her 40 hour work week, entitles Waddell to a minimum of three (3) hours compensation per maintenance session, paid at time and one-half.

79. In 2008, Waddell cared and maintained Magic, who was the property of the Police Department, from December 3, 2008 through December 31, 2008 twice a day. This totals 28 days.

80. Pursuant to the Fair Labor Standards Act, Waddell is entitled to $8,190.00 for her care and maintenance of Magic in 2008.

81. In 2009, Waddell cared and maintained Magic, who was the property of the Police Department, from January 1, 2009 through December 31, 2009 twice a day. This totals 365 days.

82. Pursuant to the Fair Labor Standards Act, Waddell is entitled to $114,383.70 for her care and maintenance of Magic in 2009.

83. In 2010, Waddell cared and maintained Magic, who was the property of the Police Department, from January 1, 2010 through June 2, 2010 twice a day. This totals 153 days.

84. Pursuant to the Fair Labor Standards Act, Waddell is entitled to $47,765.19 for her care and maintenance of Magic in 2010.

85. The Defendant has refused or failed to pay Waddell for the work performed in addition to her assigned 40 hour work week.

LORONA STEINER DUCAR, LTD.
ATTORNEYS AT LAW
3003 NORTH CENTRAL AVENUE, SUITE 1500
PHOENIX, ARIZONA 85012
(602) 277-3000

9

86.     As a result of the Defendant's failure to comply with the Fair Labor Standards Act, the Plaintiff has incurred losses and/or suffered detriments in an amount to be proven at trial but which are reasonably believed to exceed the minimum monetary jurisdictional limitations of this Court.

WHEREFORE, Plaintiff Teresa Waddell prays that this Honorable Court grant Judgment against the Defendant as follows:

A.     For actual damages in a sum in excess of this Court's minimum jurisdiction according to proof at the time of trial;

B.     For pre-judgment and post-judgment interest as provided by law in an amount according to proof at trial;

C.     For attorneys' fees and costs in accordance with law and the rules of this Court; and

D.     For such other and further relief as the Court deems equitable, just and proper.

Dated this 25th day of October, 2011.

**LORONA STEINER DUCAR, LTD.**

By: /s/ Jess A. Lorona
    Jess A. Lorona
    Katherine E. Flaherty
    Beth H. Zuckerberg
    Attorneys for Plaintiff

**LORONA STEINER DUCAR, LTD.**
ATTORNEYS AT LAW
3003 NORTH CENTRAL AVENUE, SUITE 1500
PHOENIX, ARIZONA 85012
(602) 277-3000